FILED
2023 Feb-03  PM 12:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMES THOMAS STIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:21-cv-01106-AMM-HNJ |
| | ) | |
| LT. SEAN BRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

Plaintiff James Thomas Stimpson filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against Lt. Sean Bright alleging violations of the Eighth Amendment to the United States Constitution and Americans with Disabilities Act based on defendant Bright's deliberate indifference to Stimpson's serious medical needs.  (Doc. 1 at 1, 3, 5-6).[1]  Stimpson seeks compensatory and punitive damages.  (Doc. 1 at 9).  Consistent with its usual practice, the court referred the complaint to the undersigned Magistrate Judge for a preliminary report and recommendation pursuant to 28 U.S.C. § 636(b)(1).  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

As explained herein, the Magistrate Judge **RECOMMENDS** the court **DENY** defendant Bright's motion as to Stimpson's Eighth Amendment claim based on

---

[1] Citations herein to "Doc(s). __" correspond to the document number of the pleadings and other materials in the court file, as compiled by the Clerk and reflected on the docket sheet.  Unless otherwise noted, pinpoint citations reflect the page of the electronically filed document, which may not correspond to the pagination on the original "hard copy."

deliberate indifference to Stimpson's serious medical needs; **GRANT** defendant Lt. Sean Bright's motion as to Stimpson's ADA claim and **DISMISS** said ADA claim **WITH PREJUDICE**.

## I. Procedural History

Stimpson filed his complaint on August 10, 2021.[2] (Doc. 1 at 9). On December 17, 2021, the court entered an Order for Special Report directing the Clerk to forward copies of Stimpson's complaint to defendant Lt. Bright and directing defendant Bright to file a special report addressing Stimpson's factual allegations. (Doc. 6 at 5, 9). The Order for Special Report characterized Stimpson's claims as "Eighth Amendment and Americans with Disabilities Act claims against the defendant based on deliberate indifference to his serious medical needs." (Doc. 6 at 4). Stimpson agreed that the court correctly and accurately set forth his claims in its Order for Special Report. (*See* Doc. 7 at 1).

On April 14, 2022, defendant Lt. Bright filed a special report with supporting

---

[2] The Clerk docketed Stimpson's complaint on August 13, 2021. (*See* Doc. 1). Under the "prison mailbox rule," because a prisoner proceeding *pro se* has virtually no control over the mailing of a pleading, the court deems the pleading filed at the time the prisoner delivers the pleading to prison or jail officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 270-72 (1988); *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993) (extending "*Houston* to pro se prisoners filing complaints in section 1983 cases and claims under the Federal Tort Claims Act"). "Absent evidence to the contrary in the form of prison logs or other records," the court assumes a *pro se* prisoner delivered his pleading to prison authorities the day he signed it. *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam); *see also Taylor v. Williams*, 528 F.3d 847, 849 (11th Cir. 2008) (assuming *pro se* petitioner delivered his § 2254 habeas petition to prison authorities on the day he signed it). Stimpson dated his complaint August 10, 2021. (Doc. 1 at 9).

evidence. (Doc. 19). On April 15, 2022, the court construed the special report as a motion for summary judgment and notified Stimpson that he had 21 days to respond by filing affidavits or other evidence. (Doc. 20 at 1). The court also advised Stimpson of the consequences of any default or failure to comply with Rule 56. (Doc. 20 at 2); *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). After the court granted Stimpson's discovery request for additional medical records and his request for additional time to respond, Stimpson timely filed his response.[3] (Docs. 23, 27, 30-31).

This case proceeds before the court on defendant Bright's motion for summary judgment, (doc. 19).

## II. STANDARD OF REVIEW

Because the court construed the defendant's special report as a motion for summary judgment, *Federal Rule of Civil Procedure* 56 governs the motion. Under Rule

---

[3] Stimpson attached affidavits from numerous fellow prisoners to his Response and Rebuttal to the Defendant(s). (*See* Doc. 31 at 5-13). These affidavits primarily allege mishandling of legal mail. As Stimpson's claims in this action stand limited to whether defendant Lt. Bright violated Stimpson's rights by exhibiting deliberate indifference to Stimpson's serious medical needs pursuant to the Eighth Amendment or the ADA, potential mishandling of legal mail bears no relevance to Stimpson's claims. (*See* Doc. 6 at 4). Moreover, to the extent these affidavits set forth violations of other prisoner's rights, they stand irrelevant to Stimpson's claims as Stimpson may only pursue claims on his own behalf and not for the benefit of all prisoners incarcerated at Limestone. *See Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008) (per curiam) (explaining that 28 U.S.C. § 1654, the provision permitting parties to proceed pro se, provides "a personal right that does not extend to the representation of the interests of others." (citing *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007))).

In addition, Stimpson attached several of his affidavits to his Motion to Amend. (*See* Doc. 30 at 4-13). To the extent Stimpson's affidavits do not relate to his claims for deliberate indifference to his serious medical needs, these affidavits bear no relevance to the adjudication of defendant Lt. Bright's motion for summary judgment.

56(a), summary judgment stands proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)). The moving party has the initial burden of showing there are no genuine issues of material fact and he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The plaintiff has the ultimate burden of proving his claims, so the moving party will be entitled to judgment as a matter of law on any claim unless the plaintiff shows some evidence supporting each element of that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990). As the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") explained:

> Facts in dispute cease to be material facts when the plaintiff fails to establish a prima facie case. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations and internal quotations omitted).

The non-moving party may establish a genuine issue of material fact through his

4

sworn statement, usually an affidavit, as well as through allegations in a sworn complaint.  *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citations omitted); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (per curiam) ("Plaintiff alleged specific facts in his sworn complaint and they were required to be considered in their sworn form.")).  Unless a party's unsworn statement meets the statutory criteria set forth in 28 U.S.C. § 1746,[4] said statement stands "incompetent to raise a fact issue precluding summary judgment" and a district court may not consider it in evaluating a motion for summary judgment.  *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003) (parallel citation omitted)).  Furthermore, a non-moving party "'may not rest upon the mere allegations or denials of his pleading,'" but must set forth specific facts showing a genuine issue for trial exists.  *See Sears*, 922 F.3d at 1207 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Specific facts consist of "non-conclusory descriptions of specific, discrete facts

---

[4] As the Eleventh Circuit explained:

[U]nder § 1746, a declaration executed within the United States will substitute for a sworn affidavit if the declarant dates and subscribes the document as true under penalty of perjury in substantially the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746(2).

In short, § 1746 has these statutory requirements for an unsworn statement to substitute for a sworn affidavit: The declarant must (1) date and sign the document, and (2) subscribe its content as "true," (3) under "penalty of perjury," (4) in substantially the above-quoted pattern language.

*Roy v. Ivy*, 53 F.4th 1338, 1348 (11th Cir. 2022).

of the who, what, when, and where variety[,]" "describe the external world as [non-movant] observed it at the time[,]" and "are based on [non-movant's] first-hand personal knowledge, not [non-movant's] subjective beliefs." *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013); *see also Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) ("[M]ere conclusions and unsupported factual allegations, as well as affidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) (parallel citation omitted)).

"'As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature.'" *Sears*, 922 F.3d at 1208 (quoting *Feliciano*, 707 F.3d at 1253); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). In addition, because the plaintiff proceeds *pro se*, the court must construe the complaint more liberally than a pleading drafted by a lawyer. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Roy*, 53 F.4th at 1346. "*Pro se* litigants, however, are required to conform to procedural rules." *Roy*, 53 F.4th at 1346 (citing *Albra v. Advan, Inc.*, 490

6

F.3d 826, 829 (11th Cir. 2007) (per curiam)).

### III.  SUMMARY JUDGMENT FACTS

The State has incarcerated Plaintiff James Thomas Stimpson, 75 years old at the time he filed this lawsuit, at the Limestone Correctional Facility ("Limestone") for the past 10 years.  (Doc. 1 at 4 ¶ 4; Doc. 30 at 4).  As of June 10, 2021, six days after the incident giving rise to his complaint, Stimpson suffered from many ailments, including a urinary tract obstruction, kidney stone, gastrointestinal hemorrhage, constipation, hypokalemia, painless rectal bleeding, hematochezia, anticoagulant therapy, chronic gastroesophageal reflux disease, hypothyroidism, congestive heart failure, essential hypertension, gout, hyperlipidemia, history of deep vein thrombosis, and diverticulosis of colon.  (Doc. 38-2 at 55-56; *see also* Doc. 38-1 at 167-173).

Prisoners receive and mail packages through the package room located in the receiving unit at Limestone.  (*See* Doc. 1 at 1 ¶ 1; Doc. 19-2 (Bright Aff.) at 2).  Although the receiving unit has no handrails or wheelchair ramps to assist handicapped prisoners, prisoners confined to a wheelchair may use the sidewalk outside of the receiving unit.  (Doc. 19-2 (Bright Aff.) at 1; Doc. 30 at 5).  Defendant Lt. Sean Bright, a Correctional Lieutenant with the Alabama Department of Corrections ("ADOC"), utilizes the package room as his office.  (Doc. 19-3 (Duncan Decl.) at 2 ¶ 8).  Officer Bryan Duncan, a Senior Correctional Officer employed by ADOC, has worked in the receiving unit at Limestone for over three years.  (Doc. 19-3 (Duncan Decl.) at 1 ¶ 2).

On June 4, 2021, Stimpson went to the package room to mail two footballs, one

to his grandson and another to his attorney.[5]  (Doc. 1 at 3 ¶ 1; Doc. 19-2 (Bright Aff.) at 2; Doc. 19-3 (Duncan Decl.) at 1 ¶ 4).  A fellow prisoner pushed Stimpson in his wheelchair up to the crossover gate located near the receiving unit.  (Doc. 30 at 5).  When they reached the crossover gate, Stimpson stood up from his wheelchair using his cane, placed his cane along with his packages in the wheelchair, and pushed the wheelchair to the package room in the receiving unit.  (Doc. 30 at 5).  Officer Duncan, on duty at the package room at that time, observed Stimpson pushing the wheelchair and holding a cane.  (Doc. 19-3 (Duncan Decl.) at 1-2 ¶ 4).  Stimpson left his wheelchair outside the package room, walked into the package room holding his two footballs as well as his cane, and handed Officer Duncan the two footballs to mail.  (Doc. 30 at 5).

As Stimpson left the package room, defendant Lt. Bright stopped him because Stimpson did not have an armband on his wrist.[6]  (Doc. 30 at 5).  Stimpson informed Bright he wore his armband on his belt and that Dr. Gulati issued Stimpson a medical profile to do so as Stimpson suffered an allergic reaction when wearing the arm band on his wrist.[7]  (Doc. 1 at 3 ¶ 2; Doc. 30 at 5).  Lt. Bright informed Stimpson he could

---

[5] Stimpson works in the hobby craft shop.  (Doc. 1 at 7; Doc. 30 at 4).  He occasionally mails purses, footballs, and other articles produced in the shop to his family and friends.  (Doc. 1 at 7).

[6] Limestone inmates must wear an arm band signifying the dorm to which they are assigned.  (Doc. 1 at 3 ¶ 2; Doc. 19-2 (Bright Aff.) at 2).  The arm band must be visible to correctional officers.  (Doc. 1 at 3 ¶ 2).

[7] Defendant Lt. Bright acknowledges that not all prisoners wear the arm bands on their wrists.  (Doc. 19-2 (Bright Aff.) at 2).  However, he insists that prisoners could not wear belts around their waists at the time of the incident although they could prior to February 2020.  (Doc. 19-2 (Bright Aff.) at 2).  ADOC issued tan uniforms to prisoners in February 2020 that do not have belt loops but

not wear a belt around his waist and confiscated Stimpson's custom handmade belt. (Doc. 1 at 3 ¶¶ 2-3). Stimpson contends this interaction constitutes a continuation of the harassment and verbal abuse defendant Lt. Bright inflicted on Stimpson over several years prior to June 4, 2021. (Doc. 1 at 3 ¶ 2).

After confiscating Stimpson's belt, Lt. Bright questioned Stimpson about the cane and wheelchair in his possession. (Doc. 30 at 5). Purportedly lacking familiarity with Stimpson or Stimpson's medical profiles,[8] Lt. Bright asked Stimpson to produce the medical profiles[9] permitting him to possess a cane and a wheelchair. (Doc. 1 at 4 ¶

---

instead have an elastic waist band. (Doc. 19-2 (Bright Aff.) at 2). As prisoners may not alter the uniforms, ADOC prohibited prisoners from wearing belts. (Doc. 19-2 (Bright Aff.) at 2). If a medical professional issues a prisoner a medical profile which exempts said prisoner from wearing the arm band on his wrist, said prisoner must keep the armband in the pocket of his uniform shirt or jacket. (Doc. 19-2 (Bright Aff.) at 2). Stimpson contends Dr. Gulati issued him a medical profile allowing him to wear the arm band on his custom handmade belt due to Stimpson's allergic reaction to wearing the arm band on his wrist. (Doc. 1 at 3 ¶ 2). Stimpson further contends defendant Lt. Bright told him he must obtain a medical profile if Stimpson could not wear the arm band on his wrist, and Stimpson alleges Limestone allows other prisoners to wear belts around their waists. (Doc. 1 at 3 ¶ 3; Doc. 30 at 5). Dr. Gulati issued Stimpson an "armband to belt profile" on January 29, 2021. (Doc. 38-1 at 62).

[8] Limestone houses an average of 1,900 to 2000 prisoners. (Doc. 19-2 (Bright Aff.) at 2). Defendant Lt. Bright personally deals with well over 100 prisoners each week and does not personally remember what prisoners have medical profiles. (Doc. 19-2 (Bright Aff.) at 2). On multiple previous occasions, defendant Lt. Bright observed prisoners in possession of wheelchairs, walkers, canes, and crutches without a valid medical profile. (Doc. 19-2 (Bright Aff.) at 1-2). On these occasions, prison officials would return the unauthorized medical devices to the medical staff in the healthcare unit. (Doc. 19-2 (Bright Aff.) at 2).

[9] When a prisoner needs medical equipment, a medical professional will issue that prisoner a medical profile authorizing him to possess the necessary medical equipment. (Doc. 19-3 (Duncan Decl.) at 2 ¶ 5). Lt. Bright knew medical professionals issued medical profiles for walking canes, wheelchairs, walkers, and crutches. (Doc. 19-2 (Bright Aff.) at 1). ADOC policy requires prisoners to keep medical profiles on their person. (Doc. 19-2 (Bright Aff.) at 1; Doc. 19-3 (Duncan Decl.) at 1 ¶ 5).

5; Doc. 19-2 (Bright Aff.) at 2; Doc. 19-3 (Duncan Decl.) at 1-2 ¶ 4).  Officer Duncan, assisting Lt. Bright at the time, did not consider the request unusual as he himself regularly requests that prisoners produce their medical profiles.[10]  (*See* Doc. 19-3 (Duncan Decl.) at 2 ¶ 5).  Stimpson gave Officer Duncan his documentation.[11]  (*See* Doc. 19-3 (Duncan Decl.) at 2 ¶ 6).

Officer Duncan concedes Stimpson presented a valid cane profile at that time, but Duncan suspected the invalidity of the typewritten wheelchair profile as medical profiles are typically handwritten.  (Doc. 19-3 (Duncan Decl.) at 2 ¶ 6).  As a result, Lt. Bright ordered Officer Duncan to place Stimpson in holding cell #3 while Lt. Bright confirmed whether Stimpson possessed a valid medical profile for the wheelchair. (Doc. 19-2 (Bright Aff.) at 2-3; Doc. 19-3 (Duncan Decl.) at 2 ¶ 7).  Although Stimpson attempted to explain that he could not walk even a short distance without his cane, neither Lt. Bright nor Officer Duncan allowed Stimpson to use the cane or wheelchair to walk to the holding cell approximately ten feet away from the package room.[12]  (Doc.

---

[10] On multiple previous occasions, Officer Duncan discovered prisoners in possession of wheelchairs, walkers, canes, and crutches without a valid medical profile.  (Doc. 19-3 (Duncan Decl.) at 2 ¶ 5).  Prisoners can hide contraband in medical devices or use them as weapons.  (Doc. 19-3 (Duncan Decl.) at 2 ¶ 5).

[11] The parties contest what occurred subsequent to Stimpson's tendering of the documentation.  As the undersigned must draw all reasonable inferences in favor of Stimpson, Stimpson's version of events controls for purposes of this motion.

[12] Officer Duncan contends he allowed Stimpson the use of his cane, but temporarily confiscated Stimpson's wheelchair and left it in the hallway.  (Doc. 19-3 (Duncan Decl.) at 2 ¶ 9).

1 at 4 ¶¶ 6-7).  Therefore, Stimpson "had to place both his hands against the wall on one side of the hallway, palms down against the wall to try and support himself while moving down the hall slowly, to keep from falling."[13]  (Doc. 1 at 4 ¶ 7).

After Officer Duncan shut the cell door, Stimpson fell while attempting to walk from the door to the wooden benches that lined the cell.  (Doc. 1 at 4 ¶¶ 7-8).  Stimpson injured his forearms, and sustained bruising and tearing to his skin in a couple of places.  (Doc. 1 at 4 ¶ 8).  At that time, Stimpson did not believe himself seriously injured.  (*See* Doc. 1 at 4 ¶ 8).  Stimpson rose from the floor and sat on the bench before Officer Duncan returned about 10 minutes later.  (Doc. 1 at 4 ¶ 9).

After receiving confirmation that Stimpson possessed valid medical profiles for the use of a cane and wheelchair, Lt. Bright ordered Officer Duncan to release Stimpson.[14]  (Doc. 19-2 (Bright Aff.) at 3; Doc. 19-3 (Duncan Decl.) at 2 ¶ 9).  Officer Duncan released Stimpson from the holding cell and returned Stimpson's cane and wheelchair.[15]  (Doc. 1 at 4 ¶ 9; Doc. 19-2 (Bright Aff.) at 3; Doc. 19-3 (Duncan Decl.)

---

[13] Officer Duncan contends he watched as Stimpson entered the holding cell and sat down on the bench by the door.  As he closed the cell door, Officer Duncan observed Stimpson sitting on the bench by the cell door.  (Doc. 19-3 (Duncan Decl.) at 2 ¶ 9).

[14] On January 29, 2021, Dr. Gulati issued Stimpson a year-long cane profile.  (Doc. 38-1 at 62; *see also* Doc. 1 at 4 ¶ 4).  Dr. Gulati further ordered that Stimpson should not stand for prolonged periods.  (Doc. 38-1 at 62).  On March 16, 2021, Dr. Gulati ordered Stimpson a wheelchair due to decreased mobility.  (Doc. 38-1 at 39, 144; *see also* Doc. 1 at 4 ¶ 4).  On March 19, 2021, Stimpson received the wheelchair.  (Doc. 38-1 at 25).

[15] Officer Duncan contends he returned only the wheelchair to Stimpson as Stimpson retained possession of his cane throughout the incident.  (Doc. 19-3 (Duncan Decl.) at 2 ¶ 8).

at 2 ¶ 9).  Officer Duncan instructed Stimpson to proceed to the health care unit and obtain an updated copy of his medical profiles.  (Doc. 19-2 (Bright Aff.) at 3; Doc. 19-3 (Duncan Decl.) at 2 ¶ 9).  Stimpson told neither Lt. Bright nor Officer Duncan about his fall in the holding cell upon his release.  (Doc. 1 at 4-5 ¶ 9; Doc. 19-2 (Bright Aff.) at 3; Doc. 19-3 (Duncan Decl.) at 3 ¶ 10).  Furthermore, Officer Duncan saw no evidence Stimpson suffered injuries or had fallen while in the holding cell.  (Doc. 19-3 (Duncan Decl.) at 3 ¶ 10).

That evening, Stimpson began defecating blood, and on June 5, 2021, medical staff ordered him transferred to Crestwood hospital by ambulance, as documented on incident LCF-21-00803.[16]  (Doc. 1 at 5 ¶¶ 10-11; Doc. 19-2 (Bright Aff.) at 3).  The Crestwood Medical Center Imaging Report from Stimpson's June 6, 2021, CT Imaging Report does not set forth the cause of Stimpson's gastrointestinal bleeding.  (*See* Doc. 19 at 7; Doc. 19-4 at 4-6).  Stimpson remained in the hospital for five days before returning to Limestone.  (*See* Doc. 19-4 at 6).

Although Lt. Bright contends any injuries Stimpson sustained resulted from Stimpson's Coumadin/Warfarin therapy,[17] there exists no medical evidence in the

---

[16] Lt. Bright did not attach Incident Report LCF- LCF-21-00803 to his Special Report.  (*See* Doc. 19 and attachments thereto).

[17] Stimpson's medical records confirm he took Warfarin, also called Coumadin, during the relevant timeframe.  (Doc. 38-1 at 68, 76-77, 83, 101-03, 119-20, 130-31, 164-66, 178; Doc. 38-2 at 101, 110, 116, 121).  Warfarin/Coumadin, a blood thinner, can cause gastrointestinal bleeding.  (*See* Doc. 19-4 at 2).  After Stimpson's admission to Crestwood Hospital to determine the source of his

record establishing Stimpson's injuries could not have resulted from his fall in the holding cell.  (*See generally* Doc. 19 and attachments thereto; Doc. 38 and attachments thereto).

## IV.  ANALYSIS

### A.    Eighth Amendment Claim

Stimpson asserts Lt. Bright violated his Eighth Amendment rights by exhibiting deliberate indifference to his serious medical needs.  Specifically, Stimpson contends Bright confiscated Stimpson's medically prescribed walking aids and forced Stimpson to walk unaided to the holding cell which caused Stimpson to fall and injure himself. The undersigned concludes Stimpson established a prima facie case as to this claim.

"The Eighth Amendment forbids the 'inflict[ion]' of 'cruel and unusual punishments.'"  *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting U.S. Const. amend. VIII).  "And the Supreme Court has held that because the Cruel and Unusual Punishments Clause prohibits 'the unnecessary and wanton infliction of pain,' it also prohibits 'deliberate indifference to serious medical needs of prisoners.'"  *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  "'Federal and state governments therefore have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration.'"  *Id.* (quoting

---

gastrointestinal bleeding, the discharging physician recommended Stimpson cease consumption of Coumadin.  (Doc. 38-2 at 55).

*Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991)).

"'To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.'" *Hoffer*, 973 F.3d at 1270 (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). "To meet the first prong, the plaintiff must demonstrate an 'objectively serious medical need' - i.e., 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention,' and, in either instance, 'one that, if left unattended, poses a substantial risk of serious harm.'" *Id.* (quoting *Farrow*, 320 F.3d at 1243). "To satisfy the second, subjective prong, the plaintiff must prove that the prison officials 'acted with deliberate indifference to his serious medical need.'" *Id.* (alteration adopted) (quoting *Harper v. Lawrence Cnty.*, 592 F.3d 1227, 1234 (11th Cir. 2010)). "'To establish deliberate indifference,'" a plaintiff must demonstrate that the prison officials '(1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) acted with more than gross negligence.'" *Id.* (quoting *Harper*, 592 F.3d at 1234). "An inmate-plaintiff bears the burden to establish both prongs." *Id.* (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

"'[D]eliberate indifference is not a constitutionalized version of common-law negligence.'" *Hoffer*, 973 F.3d at 1271 (quoting *Swain v. Junior*, 961 F.3d 1276, 1287-88 (11th Cir. 2020)). "'To the contrary, [the Eleventh Circuit] ha[s] been at pains to emphasize that "the deliberate indifference standard ... is far more onerous than normal

tort-based standards of conduct sounding in negligence," and is in fact akin to "subjective recklessness as used in the criminal law."'" *Id.* (quoting *Swain*, 961 F.3d at 1287-88 (quoting in turn, respectively *Goodman v. Kimbrough*, 718 F.3d 1325, 1332 (11th Cir. 2013), and *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994))). "With respect to prisoners' medical care, in particular, [the Eleventh Circuit] ha[s] held that the Eighth Amendment doesn't require it to be 'perfect, the best obtainable, or even very good.'" *Id.* (quoting *Harris*, 941 F.2d at 1510). "Rather, [the Eleventh Circuit] ha[s] emphasized, 'medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (alterations adopted) (quoting *Harris*, 941 F.2d at 1510).

Moreover, "[a]s with any other claim brought under § 1983, to succeed, the inmate must demonstrate a causal connection between the prison official's conduct and the Eighth Amendment violation. *Rodriguez v. Sec'y Dep't Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (citing *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982); *LaMarca v. Turner*, 995 F.2d 1526 (11th Cir. 1993)).

Prison officials can avoid Eighth Amendment liability by showing: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45.

### 1.  Serious Medical Need

On January 29, 2021, Dr. Gulati issued Stimpson a year-long cane profile.  (Doc. 38-1 at 62; *see also* Doc. 1 at 4 ¶ 4).  Dr. Gulati further ordered that Stimpson should not stand for a prolonged period.  (Doc. 38-1 at 62).  On March 16, 2021, Dr. Gulati ordered Stimpson a wheelchair due to decreased mobility.  (Doc. 38-1 at 39, 144; *see also* Doc. 1 at 4 ¶ 4).  Stimpson exhibited a serious medical need for his cane and wheelchair. *See Hoffer*, 973 F.3d at 1270 (defining a serious medical need as "'one that has been diagnosed by a physician as mandating treatment'" and "'one that, if left unattended, poses a substantial right of serious harm'" (quoting *Farrow*, 320 F.3d at 1243)).

### 2.  Subjective Knowledge

To prove deliberate indifference, Stimpson must demonstrate Lt. Bright subjectively knew of a risk of serious harm to Stimpson.  *Hoffer*, 973 F.3d at 1270.

> Subjective knowledge of the risk requires that the defendant be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Caldwell v. Warden, FCI Talladega*, 748 F. 3d 1090, 1100 (11th Cir. 2014).  "[I]mputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference.  Each individual defendant must be judged separately and on the basis of what that person kn[ew]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (citation omitted).

*Dang by and through Dang v. Sheriff, Seminole Cnty, Fla.*, 871 F.3d 1272, 1280 (11th Cir. 2017).  "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Rodriguez*, 508 F.3d at 617 (quoting *Farmer*, 511 U.S. at 842).

Officer Duncan concedes, and Lt. Bright does not dispute, Stimpson presented a valid cane profile prior to his placement in the holding cell.  (*See* Doc. 19-2 (Bright Aff.) at 2; Doc. 19-3 (Duncan Decl.) at 2 ¶ 6).  When a prisoner needs medical equipment, a medical professional will issue that prisoner a medical profile authorizing him to possess the necessary medical equipment.  (Doc. 19-3 (Duncan Decl.) at 2 ¶ 5).  Lt. Bright knew medical professionals issued medical profiles for walking canes, wheelchairs, walkers, and crutches.  (Doc. 19-2 (Bright Aff.) at 1).  Therefore, Lt. Bright subjectively knew Stimpson had a serious medical need because he subjectively knew a medical professional found Stimpson needed a cane and authorized the use of said cane.[18]

### 3.    More than Gross Negligence

Resolving all disputes of fact in favor of Stimpson, the facts establish that despite Lt. Bright's knowledge of Stimpson's valid cane profile, he ordered Officer Duncan to confiscate Stimpson's cane and wheelchair and forced Stimpson to walk unaided to holding cell #3 about 10 feet away from the package room.  (Doc. 1 at 4 ¶¶ 6-7; Doc. 19-2 (Bright Aff.) at 2-3; Doc. 19-3 (Duncan Decl.) at 2 ¶¶ 6-7).  A prison official's intentional interference with prescribed medical treatment can constitute deliberate

---

[18] Neither defendant Lt. Bright nor Officer Duncan subjectively knew Stimpson fell while in the holding cell.  Stimpson admits neither officer saw him fall, and he told neither officer about his fall before he left the receiving unit.  (Doc. 1 at 4-5 ¶¶ 8-9; Doc. 19-2 (Bright Aff.) at 3; Doc. 19-3 (Duncan Decl.) at 3 ¶ 10).  The undersigned does not construe Stimpson's complaint as attempting to state a claim for deliberate indifference based on Lt. Bright's failure to procure Stimpson medical attention after Stimpson fell.  However, to the extent Stimpson does so, his claim must fail.

indifference. *Estelle*, 429 U.S. at 104-05 ("[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed…deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." (footnotes omitted)); *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1169 n. 17 (11th Cir. 1995) ("The Eighth Amendment prohibits state caretakers from intentionally delaying medical care or knowingly interfering with treatment once prescribed." (citations omitted)); *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985) ("'Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment....'" (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980))); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985) (per curiam) (reversing directed verdict for county officials who failed to give a pre-trial detainee "icepacks and aspirin prescribed by the doctor for pain upon his return to the jail" because "[d]eliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a pre-trial detainee, but also by 'intentionally interfering with the treatment once prescribed'" (quoting *Estelle*, 429 U.S. at 105)).[19]

---

[19] The Fourteenth Amendment's due process clause governs the treatment of arrestees or pretrial detainees in custody while the Eighth Amendment's prohibition on cruel and unusual punishment governs the treatment of convicted prisoners. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985) (citations omitted). However, the minimum standard of medical care required by the

Other than setting forth the theoretical security risks canes or wheelchairs can pose, neither defendant Lt. Bright nor Officer Duncan established the necessity of confiscating Stimpson's cane or wheelchair and forcing Stimpson to walk to a holding cell while Lt. Bright verified the validity of Stimpson's wheelchair profile.  (*See* Doc. 19-3 (Bryan Decl.) at 2 ¶ 5).  Moreover, neither defendant Lt. Bright nor Officer Duncan explained why they needed to lock up an elderly man for the less ten minutes it took to verify his wheelchair profile.  (*See generally* Doc. 19-2 (Bright Aff.); Doc. 19-3 (Bryan Decl.)).

### 4.  Causation

Section 1983 "requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation."  *LaMarca*, 995 F.2d at 1538 (internal quotation marks and citations omitted). That is, the constitutional deprivation must constitute "a legal cause of [the plaintiff's] injuries" and not merely pose a contributing factor.  *Williams*, 689 F.2d at 1381; *LaMarca*, 995 F.2d at 1538.

There exists no doubt Lt. Bright personally participated in the alleged constitutional violation.  *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per

---

due process clause and the clause prohibiting cruel and unusual punishment stands the same; therefore, the same standard applies to medical care provided to pretrial detainees and convicted prisoners.  *Id.* at 1574 (holding "that in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons").  As such, caselaw interpreting the Fourteenth Amendment applies to Stimpson's claims.  *See id.*

curiam) ("A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." (citing *Ancata*, 769 F.2d at 706 (11th Cir.1985)).  The facts taken in the light most favorable to Stimpson establish that Lt. Bright, with knowledge of Stimpson's valid cane profile, ordered Officer Duncan to confiscate Stimpson's cane and wheelchair and forced Stimpson to walk unaided to holding cell #3 for about ten feet, which caused Stimpson to fall.  (Doc. 1 at 4 ¶¶ 6-7; Doc. 19-2 (Bright Aff.) at 2-3; Doc. 19-3 (Duncan Decl.) at 2 ¶¶ 6-7).  Although Lt. Bright contends his actions did not cause Stimpson's internal bleeding, there exists no medical evidence in the record conclusively establishing Stimpson's bleeding could not have resulted from his fall in the holding cell.  (*See generally* Doc. 19 and attachments thereto; Doc. 38 and attachments thereto).  In fact, based upon a reasonable inference medical professionals provisionally linked the fall with Stimpson's internal bleeding.  (*See* Doc. 19-4 at 4 ("History: Fell 6-4-21.  GI Bleeding.")).  As such, Stimpson established a prime facie case that Lt. Bright's actions caused Stimpson's internal bleeding due to the fall in the absence of the assistive devices.

### 5.   Qualified Immunity

Qualified immunity protects governmental officials performing discretionary functions in their individual capacity from civil suit and liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Hill v. Cundiff*, 797 F.3d 948, 978 (11th Cir.

2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

There exists no dispute Lt. Bright performed a discretionary function in these circumstances.  Furthermore, as analyzed previously a reasonable jury may determine Lt. Bright violated Stimpson's constitutional rights based upon Stimpson's allegations at this juncture.  Therefore, whether applicable case law clearly established Stimpson's constitutional rights stands the only remaining issue.  *See Hill*, 797 F.3d at 978.

A clearly established constitutional right arises from "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Hill*, 797 F.3d at 979 (citation omitted). Although the "clearly established right must be defined with specificity," *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam), "[t]he 'very action in question' does not have to have been previously held unlawful, but the unlawfulness of the conduct must be apparent in light of pre-existing law," *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Hence, a defendant must have "fair warning" that his conduct violates the law.  *See Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002).

Binding decisions of the Supreme Court, the Eleventh Circuit, and the highest court of the pertinent state determine what rights stand clearly established.  *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) (citing *March v. Butler Cnty.*, 268 F.3d 1014,

1032 n. 10 (11th Cir. 2001 (en banc), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007)).

As of June 4, 2021, Supreme Court and Eleventh Circuit precedent clearly established that a prison official's intentional interference with prescribed medical treatment can equate to deliberate indifference. *Estelle*, 429 U.S. at 104-05 ("[W]hether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed…deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." (footnotes omitted)); *Wade v. United States*, 13 F.4th 1217, (11th Cir. 2021), *cert denied* 142 S.Ct. 1419 (2022) (explaining the Eleventh Circuit has read *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985) (per curiam) "as holding that a defendant is not entitled to a qualified immunity defense when he: (1) ignores a serious cut on an individual's head, which continued to bleed for two-and-a-half hours and form a puddle on the floor about the size of two hands, or (2) ignores a doctor's instructions for treating an injury"); *Young*, 59 F.3d at 1169 n. 17 ("The Eighth Amendment prohibits state caretakers from intentionally delaying medical care or knowingly interfering with treatment once prescribed."); *Washington*, 860 F.2d at 1021; *Ancata*, 769 F.2d at 704 ("Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment…." (quoting *Ramos*, 639 F.2d at 575); *Aldridge*, 753 F.2d at 972 (reversing directed verdict for county officials

who failed to give a pre-trial detainee "icepacks and aspirin prescribed by the doctor for pain upon his return to the jail" because "[d]eliberate indifference is shown not only by failure to provide prompt attention to the medical needs of a pre-trial detainee, but also by 'intentionally interfering with the treatment once prescribed'" (quoting *Estelle*, 429 U.S. at 105)); *Brown v. Smith*, 187 F. App'x 947, 949-50 (11th Cir. 2006) (unpublished) (per curiam) (explaining the clearly established nature of a prisoner's right to a medically prescribed course of treatment for his serious medical need)[20].

If Stimpson's alleged facts bear veracity, then Lt. Bright violated clearly established law by requiring Stimpson to walk without his medically prescribed walking aid. Consequently, Lt. Bright's request for qualified immunity merits denial.

Stimpson engendered a prima facie showing that Lt. Bright violated the Eighth Amendment by exhibiting deliberate indifference to Stimpson's serious medical need. Furthermore, binding Supreme Court and Eleventh Circuit precedent clearly established Stimpson's right to his medical prescribed walking aid.  As such, Lt. Bright's motion for summary judgment as to this claim merits denial.

### B.    ADA Claim

Title II of the Americans with Disabilities Act requires proof: (1) that plaintiff is a qualified individual with a disability; (2) that plaintiff was excluded from the

---

[20] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. Rule 36-2.

participation in or denied the benefits of the services, programs, or activities of a public entity or was otherwise subjected to discrimination by such entity; (3) by reason of such disability. *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001). Title II of the ADA "authorizes suits by private citizens for money damages against public entities that violate § 12132." *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12133). The term public entity includes state prisons. *Id.* (citing *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998)). "Individuals and private entities, however, are not subject to liability under Title II of the ADA." *Brenna v. Thomas*, 780 F. App'x 813, 822 (11th Cir. 2019 (unpublished) (per curiam) (citing *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010)). As such, "there is no individual capacity liability under Title II of the ADA or [the Rehabilitation Act of 1974 ("RA")]." *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (unpublished) (per curiam) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001)). Accordingly, Lt. Bright stands entitled to judgment as a matter of law as to Stimpson's claims for monetary damages against him in his individual capacity.

In *United States v. Georgia*, the Supreme Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." 546 U.S. 151 (2006) (emphasis in original). As such, sovereign immunity does not prevent Stimpson from suing Lt. Bright for monetary damages in his official capacity, assuming Stimpson asserts the same conduct that violated his rights under the Eighth

Amendment, made applicable to the States via the Fourteenth Amendment, also violated his rights under the ADA.  (*See* Doc. 30 at 9) ("[Y]ou never know what Lt. Bright will do to you, for no reason if you have a wheelchair, or a cane, if you are disable and crippled Lt. Bright hates the disable inmates here at Limestone prison!").  However, Stimpson failed to prove his entitlement to monetary damages under the ADA.

> In the ordinary course, proof of a Title II . . . violation entitles a plaintiff only to injunctive relief. *Silva v. Baptist Health S. Fla., Inc.*, 856 F.3d 824, 831 (11th Cir. 2017). To get damages[,] a plaintiff must clear an additional hurdle: he must prove that the entity that he has sued engaged in intentional discrimination, which requires a showing of "deliberate indifference." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 348 (11th Cir. 2012).

*Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1134 (11th Cir. 2019).

> "Deliberate indifference," we have said, is an "exacting standard." [*J.S., III by & through J.S. Jr. v. Hous. Cty. Bd. of Educ.*, 877 F.3d 979, 987 (11th Cir. 2017).] It requires proof that "the defendant knew that harm to a federally protected right was substantially likely and ... failed to act on that likelihood." *Liese*, 701 F.3d at 344 (citation omitted). Moreover, in order to hold a government entity liable, the plaintiff must demonstrate that an "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [entity's] behalf" had "actual knowledge of discrimination in the [entity's] programs and fail[ed] adequately to respond." *Id.* at 349 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998)). To qualify, that "official" must be "high enough up the chain-of-command that his [or her] acts constitute an official decision by the [entity] not to remedy the misconduct." *J.S.*, 877 F.3d at 987 (internal quotation marks omitted).

*Silberman*, 927 F.3d at 1134.

> To be sure, an "official" needn't be so high up the chain of command that she is "authorized to set an entity's policy."  *Liese*, 701 F.3d at 349-50. But she must be high enough that her actions "constitute an official decision

> by the [entity] itself not to remedy the misconduct." *Doe*, 604 F.3d at 1255
> (internal quotation marks and citation omitted). That, we have said,
> requires "substantial supervisory authority." *Liese*, 701 F.3d at 350.

*Silberman*, 927 F.3d at 1135 (alterations and emphasis in original). The record before the court does not establish Lt. Bright exercised sufficient supervisory authority such that his actions constitute official decisions by ADOC. (*See* Doc. 19-2 (Bright Aff.) at 1). As such, Lt. Bright stands entitled to judgment as a matter of law as to the damages claim Stimpson brings against him pursuant to the ADA, and the court should grant his motion and dismiss Stimpson's claim with prejudice.

## V. RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** the court **DENY** Lt. Bright's motion as to Stimpson's Eighth Amendment claim based on deliberate indifference to his serious medical needs; **GRANT** Lt. Bright's motion as to Stimpson's ADA claim and **DISMISS** said ADA claim **WITH PREJUDICE**.

## VI. NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days**. The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence. Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

**DONE** this 3rd day of February, 2023.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE